**14 CV 6417**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

RUQAYYAH SHABAZZ,

Plaintiff,

-against-

CITY OF NEW YORK; Police Officer
GUISSEPPE MURIALE, Shield No. 5291; and
JOHN and JANE DOE 1 through 10, individually
and in their official capacities (the names John and
Jane Doe being fictitious, as the true names are
presently unknown),

Defendants.

------------------------------------------------------------------- x

**COMPLAINT**

Jury Trial Demanded



RECEIVED
AUG 1 2 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## NATURE OF THE ACTION

1.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Ruqayyah Shabazz ("plaintiff" or "Ms. Shabazz") is a resident of Bronx County in the City and State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9. Defendant Police Officer Giussepe Muriale, Shield No. 5291 ("Muriale"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Muriale is sued in his individual and official capacities.

10. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

11.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD.  Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

12.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

13.     Prior to the incident described herein, Ms. Shabazz had never been arrested.

14.     At approximately 8:45 a.m. on April 16, 2014, Ms. Shabazz was lawfully on her way to work in Manhattan.

15.     Plaintiff entered the 3rd Avenue – 138th Street Subway station in the Bronx, swiped her Metrocard and boarded a Manhattan-bound 6 train.

16.      When the train stopped at the 86th Street – Lexington Avenue station in Manhattan, there was an announcement that the train was going out of service and all passengers were required to disembark.

17.      Ms. Shabazz left the train with her fellow passengers and walked on the platform toward the station exit.

18.     Before she reached the exit, Ms. Shabazz encountered MTA Station Supervisor Mohammed Hamid, who was holding a gate open.

-3-

19.     From the platform side of the gate, Ms. Shabazz asked Mr. Hamid whether bus transfer tickets would be provided to passengers in light of the service disruption.

20.     Mr. Hamid replied, in sum and substance, that he was not sure and instructed Ms. Shabazz to wait while he found out.

21.     While Ms. Shabazz was waiting on the platform as instructed, defendant Muriale called over to her.

22.     When Ms. Shabazz approached him, defendant Muriale demanded her Metrocard and accused her of entering the station without payment.

23.     Ms. Shabazz provided her Metrocard and truthfully explained that she had been a passenger on the 6 train and was waiting on the platform at the instruction of an MTA employee.

24.     Defendant Muriale grabbed Ms. Shabazz, shoved her against a wall, handcuffed her extremely tightly and brought her to a corner.

25.     Mr. Hamid returned and was surprised to find Ms. Shabazz in police custody.

26.     Mr. Hamid spoke to the officers and confirmed what Ms. Shabazz had told them.

27.     One of the defendants told Mr. Hamid, in sum and substance, that he still would not release Ms. Shabazz because she was being "disorderly."

-4-

28.     At no point was Ms. Shabazz disorderly, nor had she committed any other crime or offense.

29.     Ms. Shabazz repeatedly requested that the excessively tight handcuffs be loosened, but defendants refused.

30.     Ms. Shabazz was led from the station in handcuffs and brought up to a waiting police vehicle.

31.     At the police vehicle, plaintiff again requested that her handcuffs be loosened.

32.     In response, a defendant tightened the handcuffs.

33.     Ms. Shabazz was wedged into the police vehicle and taken to Union Square.

34.     Ms. Shabazz was led in handcuffs from the police vehicle along Union Square to a police precinct inside the Union Square Subway station.

35.     Ms. Shabazz was placed in a disgusting cell inside the precinct.

36.     At the precinct, defendants falsely informed employees of the New York County District Attorney's office that Ms. Shabazz had committed theft of services and trespass and completed false paperwork regarding the circumstances of plaintiff's arrest.

37.     Ms. Shabazz was then taken to Manhattan Central Booking, also known as The Tombs.

38.     Ms. Shabazz was arraigned and the criminal charges were adjourned in contemplation of dismissal.

39.     After spending over ten hours in custody, Ms. Shabazz was finally released.

40.     Ms. Shabazz continues to suffer pain and discomfort from the physical injuries she sustained in the incident and has required continuing medical treatment, including physical therapy.

41.     Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office.

42.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

43.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

44.     Plaintiff suffered damage as a result of defendants' actions.  Plaintiff was deprived of her liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, and damage to her reputation.

## FIRST CLAIM
### Unlawful Stop and Search

45.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

46.     Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched plaintiff without reasonable suspicion.

47.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

48.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

49.     Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

50.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### State Law False Imprisonment and False Arrest

51.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

52.     By their conduct, as described herein, the individual defendants are liable to plaintiff for falsely imprisoning and falsely arresting plaintiff.

53.     Plaintiff was conscious of her confinement.

54.     Plaintiff did not consent to her confinement.

55. Plaintiff's confinement was not otherwise privileged.

56. Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

57. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

## FOURTH CLAIM
### Unreasonable Force

58. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

59. The defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on plaintiff.

60. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### State Law Assault and Battery

61. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

62. By their conduct, as described herein, the defendants are liable to plaintiff for having assaulted and battered her.

Case 1:14-cv-06417-GHW Document 48-1 Filed 08/24/15 Page 9 of 16

63.     Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

64.     As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

**SIXTH CLAIM**
**Denial Of Constitutional Right To Fair Trial**

65.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

66.     The individual defendants created false evidence against plaintiff.

67.     The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's office.

68.     In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

69.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

-9-

## SEVENTH CLAIM
### Negligent Hiring/Training/Retention

70.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

71.     Defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

72.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

73.     Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

74.     Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

75.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Intentional Infliction of Emotional Distress

76.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

77.     By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon plaintiff.

78.     The intentional infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

79.     Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon plaintiff. Defendant City, as employer of each of the defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

80.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## NINTH CLAIM
### Negligent Infliction of Emotional Distress

81.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

82.     By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon plaintiff.

83.     The negligent infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

84.     Defendants, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon plaintiff. Defendant City, as employer of each of the defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior.*

85.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### TENTH CLAIM
### Failure To Intervene

86.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

87.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

-12-

88. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

89. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:      August 12, 2014
           New York, New York

           HARVIS WRIGHT & FETT LLP

           _____

           Gabriel Harvis
           305 Broadway, 14th Floor
           New York, New York 10007
           (212) 323-6880
           gharvis@hwandf.com

           *Attorneys for plaintiff*

EXHIBIT 1

Wednesday, April 23, 2014

Mohammed Hamid
MTA Station Supervisor
130 Livingston street
Brooklyn. NY- 11201

To Whom It May Concern,

My name is Mohammed Hamid, Pass # ███. I am the Station Supervisor for the *Upper East Side "6"* MTA subway line. I am assigned for the Station from 68th street to Longwood ave. On Wednesday, April 16th, I first encountered Ms. Shabazz after a train went out of service at the E 86th street station. The time was about 9:00am when the southbound local #6 train that was placed out of *service and was going to reverse its route. The trains were holding in the station and we didn't decide whether to issue* Block Tickets to customers to use alternate route.

There were many customers inquiring about bus transfers due to the disruption in train service. I was holding the gate open for the passengers to exit the station when Ms. Shabazz approached me and inquired about a bus transfer. I told her that I wasn't sure if we were going to issue the transfers so I asked her to wait while I checked on whether or not we had the authorization to issue the transit bus transfers. Finally we didn't issue the Block tickets and the trains started running with delays.

Upon my return to the platform exit I did not see Ms. Shabazz standing where I had left her. As I looked to my left I observed 2 police officers had someone detained in the corner. I was a bit surprised to see that the person they had in custody was Ms. Shabazz. She called me over and asked if I could let the officers know that she was waiting for me to return. I told the officers that she inquired about a bus transfer. I also explained to them that I had asked her to wait for me to return with a response on whether or not we were going to start issuing bus transfers due to the service disruptions. One of the officers ( I didn't get the name and / or badge # ) stated that he wasn't going to release her because she was being disorderly.

I personally didn't observe any disorderly behavior on the part of Ms. Shabazz but I don't know what happened after I left her standing by the exit door and didn't want to get involved with that. I left them standing in the corner because I had to tend to the other customers at my station. Finally, I had to leave the station to go to 138th/ 3rd ave at around 09:20 am.

If you need additional information from me I may be reached via email to
███████████████

Sincerely,

*Md- Abdul Hamid*    *NYJID*

Mohammed Hamid
Pass. # ████
Station Supervisor

*State of New York*
*County of ...*
*Signed before me on*

ARNOLIO COLORADO
Notary Public, State of New York
No. 01CO4977185
Qualified in Queens County
My Commission Expires 01-28-2015