<>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

TYSON LUCAS,

        Plaintiff,

   -against-                                          12 Civ. 3096 (CM)

PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, et al.,

        Defendants.

---------------------------------------------------------------x

## DECISION AWARDING PREVAILING PLAINTIFF'S ATTORNEYS' FEES

McMahon, J.:

    While closing to the jury at the conclusion of the trial in this action, one of plaintiff's attorneys began as follows:

    "Now, you may ask yourselves, why three lawyers on this simple enough case. It took about a day, day and a half of testimony—one, two, three, four witnesses. It doesn't involve complex commercial litigation issues with thousand, upon thousands of documents to go over and hours and hours of wiretaps." (Tr. 313)

    I had, in fact, been asking myself precisely that question since the beginning of the trial.

    This garden variety civil rights action was brought against the Port Authority of New York and New Jersey and two of its police officers, Warren Norman and Anthony Young, by Tyson Lucas, a homeless man who was charged with trespassing at the Port Authority Bus Terminal. Five questions were submitted to the jury: four involving claims against defendant Norman and one (failure to intervene) against defendant Young. Plaintiff prevailed only on his claims for false arrest and excessive force against individual defendant Warren Norman. Plaintiff was awarded $1 in compensatory damages and $10,000 in punitive damages against Officer Norman. Officer Young was exonerated of any wrongdoing. The evidence was insufficient to warrant submitting any claim against the Port Authority to the jury and the charges against it were dismissed as well. The caption mentioned "John Doe" officers, but none was ever added to the case as a named defendant.

    For the plaintiff, the case was handled from its inception by Gabriel Harvis, Esq., an attorney at the law firm of Harvis, Wright & Fett LLP. The Port Authority was represented by one attorney, Karla Dennali. The issues were straightforward, and the parties took minimal discovery (five depositions lasting a total of 11.05 hours, plus one set of interrogatories and

requests for documents, which defendants answered, and Rule 26 automatic disclosure). At the short trial that eventually took place,[1] four witnesses testified: plaintiff, the two accused officers, and a representative of the Port Authority's cleaning service. The transcript, including opening statements, closing arguments, the charge and the taking of the verdict, is 370 pages long. As for exhibits, we saw a video from a surveillance camera. There were very few other exhibits. There was no need for sophisticated electronic presentation of evidence, although the brief in support of the motion mentions this issue.

If Mr. Harvis really means it when he avers that the issues of law in civil rights litigation are "arcane," I am afraid his inexperience in showing. The issues of law in this case were, with one tiny exception, of the sort this court sees in literally hundreds of cases every year. There is nothing complex about them. The one unusual issue that arose during this case arose during the charge conference and rested on what turned out to be Mr. Harvis's mischaracterization of the law of damages in a civil rights case in this Circuit. It was resolved quickly once the court read the case cited. (Tr. 282-290).

In short, this case is a classic example of a relatively simple and straightforward civil rights case that, in this court's experience, is ordinarily handled by one lawyer for each party from inception through trial. That is how this case was handled from its inception, and that is what I was expecting when I reviewed the pre-trial submissions.

Nonetheless, on the eve of trial, Mr. Harvis' two partners, Baree Fett and Christopher Wright, filed notices of appearance and joined the trial team. Three lawyers unexpectedly showed up at the final pre-trial conference, and three lawyers sat at counsel table throughout the trial. Ms. Fett and Mr. Wright each examined two witnesses; Mr. Harvis, who had handled all pretrial discovery, examined no one. The opening was delivered by Mr. Harvis, the attorney who had been with the case from its inception; the closing by Mr. Wright (though the transcript says it was Mr. Harvis). All three lawyers were present throughout the entire course of the trial, billing $350 per hour of time spent—which was mostly spent sitting at counsel table, listening.

This overkill approach has led to an application for a fee award of $137,515, at the rate of $350 per hour for 65 hours each of work on the part of Ms. Fett and Mr. Wright and 262 hours of work on the part of Mr. Harvis. Counsel represent that each of them worked far more hours than the number of hours for which they are seeking compensation. I find that representation most disquieting.

In an action under 42 U.S.C. § 1983, like this one, the court, in its discretion, may allow the prevailing party "a reasonable attorney's fee as part of the costs." Although the statute makes an award of fees discretionary, a presumption has arisen that prevailing civil rights plaintiffs should recover reasonable attorneys' fees, unless special circumstances would render such an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

---

[1] The trial actually took as long as it did because the court had a jury deliberating in another case, and there were interruptions to deal with questions from those jurors.

There being no reason why an award of reasonable attorneys' fees would be unjust, plaintiff is entitled to such an award. The question is what amount would be reasonable.

The requested amount is not.

This case was prepared, from the filing of the complaint through the close of discovery, by one lawyer. Nothing changed at that point to transform what had been a one lawyer case into a three lawyer case—no complicated legal issue emerged at the last minute, no mountain of newly discovered evidence rained down on counsel's head. Nonetheless, one lawyer morphed into three. And while the two new lawyers may have been familiar with the case simply because all the lawyers in a small law office tend to know what is going on in their close-knit practice, the two newcomers had no day-to-day experience with the case. Jumping in at the last minute meant that they needed to learn the record thoroughly, not superficially, and prepare to examine witnesses they had not deposed or prepared for deposition. That represented a colossal and wholly unnecessary waste of attorney time.

Counsel are not shy about explaining why three lawyers appeared at the trial. There is no pretense that three lawyers were needed to try the case. Instead, in their moving brief, they frankly acknowledge that Ms. Fett and Mr. Wright joined the team at the eleventh hour and fifty-ninth minute because they "felt strongly" about the case, and because of "a shared view among the partners that defendants' 'no pay' settlement posture was misguided and a shared desire to help Mr. Lucas win." (Memorandum of Law in Support of Motion for Fees, at 3). Accepting these representations at face value, Mr. Harvis's partners pitched in at the trial because they believed in Mr. Lucas's cause—not because their services were required in order to get the case tried.[2]

Belief in the cause of a client of a law office does not justify a conclusion that it was reasonable for three lawyers to participate in the trial of a case when the case could plainly have been handled by one. And there is nothing reasonable about reimbursing three lawyers rather than one simply because defendants refused to settle the case—especially where, as here, all claims were dismissed as against two of the three defendants, two of four claims were dismissed as against the third defendant, and the plaintiff was found to have suffered only nominal damages. This was a triable case, not a slam-dunk winner for plaintiff, and I see nothing unreasonable in defendants' taking a no-pay position. I am certainly not going to punish defendants for refusing to settle by making them pay an unreasonable attorney's fee.

There is, of course, another possibility—that once the case failed to settle, all three partners worked on the trial in order to burnish their resumes. While it was their right to use the occasion of a case that fails to settle to obtain additional courtroom experience, it is not reasonable to force defendants to subsidize their acquisition of professional experience.

---

[2] That their services were not needed is obvious: for example, the joint pre-trial order, on which all three of them worked, is a total of 13 pages long, and half of it was prepared by counsel for the Port Authority.

Counsel claim to have reduced the number of claimed hours to "approximate the time a single attorney would reasonably devote to successful prosecution of the matter." If one needed confirmation that this case could and should have been handled by one lawyer, counsel's chosen approach to their fee request—approximating what it would have cost one of them to handle the matter—provides it. But there is no need to approximate: a reasonable fee request consists of the time actually spent by one lawyer. Since Mr. Harvis, who knew the case best, was present at every pretrial event and at every second of the trial, his time best represents what a single attorney would reasonably have devoted to the matter (the entire matter, including issues on which defendants prevailed). There is no need to cull the hours spent by other counsel; the expense incurred by their participation was unreasonable because it was utterly unnecessary.

I thus disallow as unreasonable the entire amount of attorneys' fees claimed for the efforts of attorneys Fett and Wright.

Mr. Harvis has put in for 262.1 hours of time, pre-trial and trial, at a rate of $350 per hour, for a total of $91,735. Of course, Mr. Harvis did not have to prepare the trial examination of the witnesses handled by his partners. So the $91,735 number does not include any time expended on that particular task. This is indeed unfortunate, because Mr. Harvis was in a position to prepare those examinations more efficiently than his partners were, since he took and defended the depositions. For that reason, it would not be fair to add the time that Ms. Fett and Mr. Wright spent preparing to Mr. Harvis' time in order to come up with a number that fairly reflects all necessary services performed in connection with the preparation and trial of this matter. Allowing five hours each for the preparation of the brief examinations of the four trial witnesses would reasonably add another twenty hours, or $7,000, to Mr. Harvis' bill—a total of $98,735.

272 hours—more or less six full 40 hour work weeks—is not, as defendants claim, an extraordinary amount of time to spend on a case of this sort. It is probably a little high for a case of this (lack of) complexity, but it is not outrageous. Neither is $350 an outrageous hourly rate for a lawyer of Mr. Harvis's experience practicing in New York City. Again contrary to defendants' arguments, it is nowhere close to rates charged by partners (even young partners) at large New York City law firms. It is well within the range of reasonable rates awarded by this court for work on comparable cases. Indeed, it is well within the range of fees identified as reasonable for small firm practitioners in New York City in cases that are between four and six years old—cases cited in the defendants' brief in opposition to the motion (Opposition Brief at n. 42) . Fees have gone up locally since 2007 and 2010.

However, one issue to be considered in awarding a reasonable fee to plaintiff's attorneys is the degree of success obtained. *Hensley*, 461 U.S. at 436. In this case, plaintiff's attorneys were in large part unsuccessful. Five issues were submitted to the jury: four claims against Officer Norman and one against Officer Young. Plaintiff's claims against the Port Authority were dismissed before the case went to the jury. The jury found for Officer Young on the lone claim against him. So neither the Port Authority nor Officer Young is liable for one dime of attorney's fees, and plaintiff cannot recover for time spent on the unsuccessful claims against them.

   Plaintiff prevailed on only half of his claims against Officer Norman and he recovered only nominal damages (although the jury elected to award a modest amount of punitive damages—so modest that defendants simply paid it rather than make a post-trial motion or take an appeal). And while the evidence relevant to the unsuccessful unlawful stop claim against Officer Norman overlapped in significant measure with the evidence on the successful false arrest and excessive force claims, the evidence in support of the unsuccessful "fabrication of evidence" claim was entirely separate. All time expended on that claim is non-compensable.

   It is not possible to tease out of the time records exactly how much time was spent on each separate claim. Therefore, in order to reflect the lack of success on the claims against the various defendants, I conclude that plaintiff's attorney, Mr. Harvis, is entitled to recover only 60 percent of the $95,235 that represents the amount of time that he expended, or would reasonably have expended, to try this case by himself. 60 percent of $98,735 is $59,241. I award that sum in attorney's fees, as costs, to plaintiff's counsel.

   Plaintiff seeks reimbursement for non-taxable costs in the amount of $2,437.31. This request is reasonable and is granted in its entirety.

   Plaintiff shall have judgment against defendant Warren Norman in the amount of $61,678.31 in costs (including attorneys' fees) pursuant to 42 U.S.C. §1988, plus taxable costs. The clerk shall enter judgment and close this file.

Dated: February 12, 2014

                     _____
                         U.S.D.J.

BY ECF TO ALL COUNSEL