UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUQAYYAH SHABAZZ,

                            Plaintiff,

            -against-                            14 CV 6417 (GHW)

CITY OF NEW YORK, et al.,

                            Defendants.
------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT
# OF MOTION FOR ATTORNEYS' FEES AND COSTS

                                           HARVIS & FETT LLP
                                           Gabriel P. Harvis, Esq.
                                           305 Broadway, 14th Floor
                                           New York, New York 10007

                                           *Attorneys for plaintiff Ruqayyah Shabazz*

August 21, 2015

## ARGUMENT

### POINT I

### THE LODESTAR CALCULATION IS PRESUMPTIVELY REASONABLE

Defendants, in their Memorandum in Opposition dated August 14, 2015 ("Def. Mem."), ignore controlling Supreme Court precedent and misrepresent the lodestar method of calculating a reasonable fee as "now disfavored in the Second Circuit" (p. 5) – it is, by defendants' account, an anachronism resulting in "windfalls to plaintiffs' counsel" that is overdue for replacement by some creative alternative. *Id* at pp. 12-14. In reality, for reasons of sound public policy, the lodestar remains "presumptively reasonable" and the "party requesting a departure from the lodestar has the burden of establishing the propriety of such departure in the calculation of a reasonable fee." *Black v. Nunwood, Inc.*, 13-CV-7207 (GHW), 2015 WL 1958917, *4-8 (S.D.N.Y. Apr. 30, 2015) (citations and quotations omitted).

Far from meeting this burden, defendants offer little but an inaccurate recitation of the parties' confidential settlement discussions in flagrant violation of Fed. R. Evid. 408. *See Gonzalez v. Scalinatella, Inc.*, 13-CV-3629 (PKC) (MHD), __F.Supp.3d.___, 2015 WL 3757069, *23 n.2 (S.D.N.Y. June 12, 2015) ("Plaintiff rightly chastises defendants for disclosing the course of these negotiations – including specific monetary demands – as confidential communication[s]

during settlement discussions subject to FRE 408.") (internal citation and quotation omitted) (citing *Siracuse v. Program for the Development of Human Potential*, 07-CV-2205 (CLP), 2012 WL 1624291, *20 (E.D.N.Y. Apr. 30, 2012) ("As an initial matter, defendant's reference to the settlement discussions and amounts offered is inappropriate.")). If anything, the extent of confidential settlement discussions undertaken by plaintiff supports the conclusion that she approached resolution of the matter in earnest good faith, and justifies a lodestar award of fees in connection with those efforts.

## POINT II

### AN UNPURSUED AND SPECIOUS DISCOVERY DISPUTE HAS NO BEARING ON PLAINTIFF'S FEE APPLICATION

Much of defendants' brief is devoted to alleged malfeasance by plaintiff in the provision of medical releases and records. *See* Def. Mem., pp. 1-4, 11, 14 ("It seems clear that the lack of medical releases…was (*sic*) done to lengthen the litigation in this matter."). This is utter sophistry. It was plaintiff alone who diligently pursued and ultimately obtained and produced all relevant releases and records in this case. The purported deficiency was never even raised with plaintiff's counsel until after plaintiff brought to defendants' attention, months into the litigation, defendants' own failure to make a settlement offer under the rules. As the Court is aware, defendants never moved on the medical record issue during the litigation.

The intellectual dishonesty of their position regarding the medical records is illustrated in this fee litigation. Defendants argue on the one hand that plaintiff failed to produce medical records and should have done more (as if this were the proper forum for such a dispute), but criticize and ask the Court to exclude from its fee award nine discrete time entries related to plaintiff's diligent efforts – over the course of nine months – to obtain those very documents. *See id.* at p. 10 n.7. Indeed, the record clearly reflects that it was defendants who repeatedly failed to abide by this Court's deadlines and rules in the course of discovery.

## POINT III

## THE PROPOSED RATES ARE REASONABLE

The Second Circuit has repeatedly held that determining the reasonable hourly rate for a fee applicant's counsel requires a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill." *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2004) (collecting cases). It is not, as the defendants contend, "ordinarily ascertained simply by reference to rates awarded in prior cases." *Id.* at 208.

The specifics of this case and counsel's skill and experience support the requested hourly rates, which are well within the range of recent awards in this district. *Abdell v. City of New York*, 05-CV-8453 (RJS), 2015 WL 898974, *3 (S.D.N.Y.

Mar. 2, 2015) ("Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.") (collecting cases) (internal citation and quotation marks omitted).

Mr. Harvis and Ms. Fett, who between them spent almost a decade in defense counsel's office, have appeared in over 500 § 1983 cases in the federal courts and conducted over a dozen jury trials, the vast majority of which have involved allegations of police misconduct like those presented here. In short, they are especially qualified counsel in a case such as this. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience….If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar."); *see also Kesselhaut v. United States*, 555 F. 2d 791, 793 (Ct. Cl. 1977) ("Attorneys having both private and Government experience are often better qualified to be of value to courts, as their officers, and to their clients, public and private, than those having one or the other experience alone.").

Defendants do not attempt to argue otherwise. Rather, they argue that February 2014 was somehow only six months ago and, extrapolating from that false premise, engage in mathematical contortions to suggest that plaintiff's counsel is seeking an exorbitant yearly increase in rates. Def. Opp. at 6-7. This is simply not the case.

First, with respect to Mr. Harvis, no amount of arithmetic Jiu Jitsu can change the fact that his rate was last set in this district seventeen months ago (for work dating back to mid-2012) following the *Lucas* trial. Plaintiff notes that, since that time, Mr. Harvis has, *inter alia*, successfully argued before the Second Circuit Court of Appeals on the issue of qualified immunity in a false arrest case and lectured on civil rights litigation at the Legal Aid Society. *See* Harvis Decl. at ¶¶ 17-18.

Despite defendants' flawed effort to extrapolate the instant fee application into a yearly request for a $100 hourly rate increase, plaintiff is not asking this Court to endorse a yearly increase of any amount. Instead, plaintiff respectfully submits that the requested rate is warranted at this time based on the circumstances of this case. *Farbotko*, 433 F.3d at 209; *see also A.R. ex rel. R.V. v. New York City Dep't of Educ.,* 407 F.3d 65, 83 (2d Cir. 2005) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (internal quotation marks

and citations omitted). Accordingly, plaintiff respectfully requests that she be awarded fees for Mr. Harvis's services at the rate of $400 per hour.

Second, an hourly rate for Ms. Fett, who has been practicing civil rights litigation for over 16 years, including as a senior supervisor in defense counsel's office, has never been set, contrary to the explicit misrepresentation at ¶ 5 of the Cooper Declaration dated August 14, 2015 ("Cooper Decl.") ("[The Court in *Lucas v. Port Authority*, 12-CV-3096 (CM)] set an hourly rate of $350 for … Ms. Baree Fett"). In fact, for reasons unique to that case, the *Lucas* court declined to set a rate for Ms. Fett and set a rate only for Mr. Harvis. *See* Cooper Decl., Exhibit C, p. 4.

Defendants otherwise offer no argument against the legitimacy of the proposed rate for Ms. Fett, which is supported by significant evidence through plaintiff's original brief. *See* Declaration of Baree N. Fett dated July 30, 2015, ¶¶ 2-11, 13-14; Declaration of Gabriel P. Harvis dated July 30, 2015 ("Harvis Decl."), ¶¶ 39-40 and Exs. 7-8. Accordingly, plaintiff's proposed hourly rate of $450 for Ms. Fett should be approved.

## POINT IV

## THE BILLED HOURS ARE REASONABLE

Aside from their misguided challenge to the time plaintiff's counsel devoted to obtaining medical records, Def. Opp., p. 10 n.7., defendants identify a total of 2.95

hours of additional work as necessary, but in their opinion more properly categorized as "administrative." Def. Opp., p. 9 n.2-3, p. 10 n.4-6.  The identified entries primarily concern research into the background of the assigned mediator, the parties and the witnesses.  It is hard to imagine how or why anyone other than the lead attorney in a case like this would handle such tasks.  *See Wise v. Kelly*, 620 F. Supp. 2d 435, 454 (S.D.N.Y. 2008) ("[T]o the extent that any of the tasks could be construed as more appropriate for a paralegal, such as organizing a file or preparing exhibits, the Court agrees with the reasoning in a case cited by Plaintiffs, which provides: "it would be unreasonable to expect attorneys to delegate every ministerial duty they perform because '[t]he time spent delegating the task could well exceed the time spent by the attorney performing the task herself.'") (citations omitted).

In any event, defendants' use of the words "inaccurate," "unreliable," "excessive" and "unnecessary" (Def. Opp., p. 8) to describe an invoice they themselves can scarcely criticize encapsulates the lack of legitimacy of the arguments contained in defendants' opposition brief.

## **CONCLUSION**

For the foregoing reasons, the Court should award plaintiff the entirety of the legal fees requested, in the amount of $38,597.50, as well as $135 for the work of paralegal Tatiana Strickland and costs in the amount of $1,135.03, for a total award of $39,867.53.

Dated:     August 21, 2015
             New York, New York

                          HARVIS & FETT LLP

                          _____
                          Gabriel P. Harvis
                          305 Broadway, 14th Floor
                          New York, New York 10007
                          (212) 323-6880
                          gharvis@civilrights.nyc

                          *Attorneys for plaintiff*

To:    David Cooper, Esq. (by ECF)